# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MELISSA COHAN,**

      Plaintiff,

  v.                                                                                  **Civil Action 2:18-cv-24**
                                                                           **Judge James L. Graham**
                                                                       **Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Melissa Cohan, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") finding that she was overpaid benefits and that the Social Security Administration ("SSA") would not waive recovery. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 11) be **OVERRULED**, and that judgment be entered in Defendant's favor.

## I. BACKGROUND

### A. Factual Background

Plaintiff applied for and was awarded mother's insurance benefits under Title II of the Social Security Act in January 2006, following the death of her husband. (Tr. 488).[1] The next year, in February 2007, Plaintiff began employment with the City of Worthington. (Tr. 617). Although not entirely clear, it appears Plaintiff informed her local SSA office of her change in employment sometime between February and April 2007. (*Id.*; *see also* Tr. 864).

During her first eighteen months of employment, Plaintiff received her benefit payments with no issue. Then, on July 15, 2008, Plaintiff received a letter from the SSA, informing her

---

[1] Plaintiff's minor son also began receiving child's benefits in January 2006. (Tr. 498).

that records showed she had earned $31,778,00 in 2007, which was above the SSA's 2007 annual earnings limit of $12,960. (Tr. 44–45). As a result, the SSA had overpaid Plaintiff's mother's benefits by $9,405.[2] (*Id.*). The letter explained that in order to recover the overpayment, the SSA would withhold Plaintiff's benefit payments beginning September 2008 through March 2009, and "[t]his is when we will have fully recovered the money you owe." (Tr. 45). In other words, the letter informed Plaintiff that she would not receive a benefit payment until her overpayment was recovered. Finally, the letter issued the following directive: "To help us pay you correctly[,] you should report changes in your earnings to any Social Security office. Any time during the year, if you see that your earnings will be different from what you had estimated or what was last reported for you, you should call to let us know." (Tr. 50).

Plaintiff agreed to have her benefits withheld in order to repay her overpayment. (Doc. 11 at 7). And, consistent with the July 2008 letter, Plaintiff's benefit payments resumed in April 2009. Several months later, on August 20, 2009, Plaintiff received another letter from the SSA stating that because she earned $39,946 in 2008, she was once again overpaid. (Tr. 59). Indeed, the earnings limit in 2008 was $13,560, meaning Plaintiff was overpaid $13,193. (Tr. 59–60). To recover the overpayment, the letter explained that the SSA would again withhold Plaintiff's benefit payments beginning October 2009, and Plaintiff's payments would reconvene in July 2010. (Tr. 60).

On September 3, 2009, Plaintiff requested an appeal and/or waiver of the overpayment. (Tr. 335–49). On November 27, 2009, the SSA provided an explanation of the overpayment,

---

[2] In the July 15, 2008 letter to Plaintiff, the SSA explained how the overpayment was calculated: "Each year there is a limit to the amount you can earn for the year and still qualify for full benefits. If you earn over the allowed amount for the year, we usually withhold $1 in benefits for every $2 you earn above the limit." (Tr. 50).

2

stating that Plaintiff's overpayment now totaled $16,564 for 2007 and 2008, and $7,640 for 2009. (Tr. 352).

On December 10, 2009, the SSA issued a waiver determination, finding that Plaintiff's overpayment would not be waived because of Plaintiff's failure to report her earnings. (Tr. 82–83). On December 22, 2009, Plaintiff requested a hearing before an Administrative Law Judge to challenge the alleged overpayment and the amount allegedly owed. (Tr. 574).

On February 4, 2010, Plaintiff received a letter from the SSA stating that she was no longer entitled to her mother's benefits beginning October 2009, the month her son turned sixteen. (Tr. 564). However, because the SSA inadvertently failed to stop Plaintiff's payments until February 2010, she was inadvertently overpaid $6,292 in benefits. (*Id.*). Plaintiff did not dispute that her benefit payments should cease once her son turned sixteen; however, she sent a letter to the SSA on February 11, 2010, again requesting waiver and contesting the amount of the overpayment. (Tr. 571).

On January 21, 2011, the SSA issued a notice of reconsideration, finding that the previous overpayment decision was correct and explaining the SSA's rationale. (Tr. 366–70). Plaintiff then filed another waiver request on February 22, 2011, explaining that she disagreed with the amount of the overpayment and believed she was not at fault. (Tr. 127–35).

On May 9, 2011, Administrative Law Judge K. Michael Foley conducted a hearing (Tr. 822), and thereafter issued an adverse decision on July 18, 2011. (Tr. 11–19). Specifically, ALJ Foley found that Plaintiff was overpaid $24,204 due to the work she performed in 2007–2009. Further, ALJ Foley stated as follows:

> In order to waive recovery of the overpayment, I must find the claimant to be "without fault." This I cannot do: the claimant is a smart professional woman,

and she is clever but untruthful. Her statements concerning her lack of knowledge of her responsibility to report her earnings are inconsistent and cannot be accepted. It was and is her responsibility to understand the criteria for receipt of the benefits she requested. She has had repeated overpayments for the same reason, and cannot be found without fault.

(Tr. 19).

The Appeals Council denied Plaintiff's request for review, making ALJ Foley's decision the final decision of the SSA. (*See* Doc. 1-16, PAGEID #: 59). Plaintiff then sought relief in this Court, initiating an action on April 15, 2013. (*See Cohan v. Comm'r of Soc. Sec.*, 2:13-cv-809). After the Commissioner sought a voluntary remand to allow for additional proceedings to explore the necessary factual issue, this Court remanded the case. (Tr. 445–47).

The Appeals Council then issued a remand order on March 11, 2015, vacating the prior hearing decision. (Tr. 457–58). Specifically, the Appeals Council opined that the Administrative Law Judge should evaluate the record to assess whether the evidence showed that Plaintiff reported her work activities and earning to the field office during the overpayment period and, if not, whether her failure to report or accept an erroneous payment was due to one of the specific circumstances articulated under 20 C.F.R. § 404.510. (Tr. 459–60).

Plaintiff appeared and testified at a second hearing before Administrative Law Judge Paul Yerian ("the ALJ") on July 25, 2016. (Tr. 851–905). Plaintiff also appeared and testified at a supplemental hearing before the ALJ on January 30, 2017. (Tr. 906–23). On May 3, 2017, the ALJ affirmed the $24,204 overpayment and found waiver was not appropriate. (Doc. 1-16). On November 14, 2017, the Appeals Council declined jurisdiction, making the ALJ's decision the final decision of the Commissioner. (Tr. 299–303).

Plaintiff filed this case on January 9, 2018 (Doc. 1), and the Commissioner filed the

4

administrative record on March 26, 2018 (Doc. 9). Plaintiff filed a Statement of Specific Errors (Doc. 11), the Commissioner responded (Doc. 12), and Plaintiff filed a Reply (Doc. 15).

### B. Relevant Testimony at the Administrative Hearings

*1. May 9, 2011 Hearing (ALJ K. Michael Foley)*

At the first hearing, Mr. Jeffery Allen, an agency actuarial official from the Columbus East SSA office testified regarding his analysis of the alleged overpayments. (Tr. 822). Mr. Allen testified that due to Plaintiff's earnings at work over the period in time in question, the total overpayment at the time was "about $24,204." (Tr. 822–23).

*2. July 25, 2016 Hearing (ALJ Paul Yerian)*

At the second hearing, Plaintiff testified that she was challenging both the calculation of her overpayment (Tr. 858), as well as the SSA's decision not to waive her overpayment (Tr. 863). The ALJ then asked Plaintiff about the SSA's July 2008 letter informing her of her overpayment:

> Q: And the first notice you got then was July 2008?
> ***
> A: Yes. It said, we paid you too much money. You owe us this amount of money and then it went into telling me how they were going to handle the situation, which I totally believed what they told me. And they did. They withheld my benefits starting September '08 to recover what was owed. And then I would receive a payment starting in April '09, which is what I did. And I lawfully went by all of their letters. And made decisions based on those letters.
> ***
> Q: Did they ever send you any kind of a, after the July '08 notice, did they ever send you any kind of a request for earnings information for the, like in November, December 2008, early January '09?
>
> A: No. No.
>
> Q: No? Never sent you anything asking you about what you had earned or what you expected to earn in the next year?

A: No.

Q: Okay. Now you were still working when they reinstated –

A: I've never left. I've been there the whole time.

Q: I know. I know. You were continuing to work when they reinstated the benefits in 2009? Is that correct?

A: Right.

Q: All right [sic].

\*\*\*

A: And they knew my earnings. They knew I was working, and –

Q: Did you ever update your earnings, because they were operating on your earnings from 2007?

A: I'm sure they knew.

Q: How do you think they knew?

A: Because I was in there several times.

Q: Did you give them updated earnings information, what you would be making in the future, or what you anticipated making?

A: Well, I don't know for sure if I went in there. They had my IRS records.

Q: Who gave them the IRS records?

A: I don't know because they had them in here, because they knew, they knew from the letters that said what I was making. That's why I assumed that they were, because they had my data –

(Tr. 866–68).

In terms of expenses, Plaintiff conceded that some of her older financial records were no longer applicable because, for example, she no longer had lease payments on two vehicles and her son had graduated college and was no longer living with her. (Tr. 869–70). Plaintiff testified

that she still provided her son with groceries and had incurred approximately $21,500 in legal fees due to this case. (Tr. 870).

The ALJ then questioned Plaintiff about her ability to repay the overpayment:

Q: . . . And it's still your position that assuming – we're going to assume for this, for this question – that I found that there was an overpayment, found you were without fault, it's your position that you can't afford to repay?

A: Correct.

Q: Because?

A: I also owe $21,500 in Attorneys fees. I think I'm also entitled to have $1,793 returned to me because of Social Security's mistakes, I had to pay the IRS an additional $1,793, and I couldn't get that money back because of this continued mess that keeps going around and around.

(Tr. 871).

### C. The ALJ's Decision

At the outset of his decision, the ALJ noted that the central issue is whether Plaintiff qualified for waiver of the overpayment. (Doc. 1-16, PAGEID #: 60). On this point, the ALJ explained that "[a]djustment or recovery of the overpayment shall be waived, if the claimant is without fault, and adjustment or recovery would defeat the purpose of the Act, or would be against equity and good conscience." (*Id.*).

The ALJ ultimately found that the overpayment amount was correct, and that Plaintiff was overpaid benefits of $24,204 during the period December 2006 to July 2009. (*Id.*, PAGEID #: 62). Relying on testimony from Mr. Allen during the first administrative hearing, the ALJ noted as follows:

Mr. Allen testified that the amount of the overpayment incurred prior to the July 2008 notice (*See* Exhibit 5) was $18,602.00 (Exhibit 57/16, 17). Specifically, this amount was arrived at by including the amount the claimant received in 2007

7

($17,711) until July 2008 payment of $10,409.00 (when the June 2008 payment was received) (*see* Exhibit 22); this totals $28,120.00. Subtracted from this amount are the payments due in 2007 ($8,031) and in 2008 prior to the payment received in July 2008 ($1,487.00) (*See* Exhibit 22); this totals $18,602.00 (*See* Exhibit 22 and Exhibit 57/16 and 17). Thus, $5,602.00 of the overpayment was incurred after the July 2008 notice (*see* Exhibit 57/15, 20 and 22).

(*Id.*, PAGEID #: 63).

The ALJ ultimately held that Plaintiff was not at fault in causing the overpayment prior to July 2008, due to her failure to understand the deduction provision of the SSA. (*Id.*). Although Plaintiff was found not to be at fault, the ALJ held that Plaintiff "ha[d] an income or financial resources sufficient for more than ordinary and necessary needs[,]" and thus, "[r]ecovery would not defeat the purpose of title II of the Act." (*Id.*, PAGEID #: 65). More specifically, when accounting for Plaintiff's monthly expenses and income, the ALJ found that Plaintiff had a balance each month of $436.46. (*Id.*).

The ALJ also found that recovery of the overpayment would not be against equity and good conscience:

> I disagree with the claimant's assertion that recovery of the overpayment would be against equity and good conscience (*See* 20 CFR 404.509) (Exhibit 82). First, there is no evidence that the claimant changed her position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or because of the overpayment itself. In this case, while the claimant reported that she made expenditures towards for example, her son's school activities (*see* Exhibit 82/10), I find that such expenditures do not support a finding of against equity and good conscience. The claimant did not incur a financial *obligation* such as a purchase agreement such that a finding of changing her position for the worse is supported. Likewise, the decision on the part of the claimant to pay costs associated with her son's participation in school activities (*see* exhibit 82/10), do not support finding that she relinquished a valuable right (*See* 20 CFR 404.509). More specifically, the claimant did not demonstrate that she gave up a valuable privilege, claim, entitlement, or benefit having monetary worth because the beneficiary relied on a notice that we would pay benefits or relied on the actual benefit payment (*See* POMS GN 02250.150 Against Equity and Good Conscience (B)(1)).

(*Id.*, PAGEID #: 66) (emphasis in original).

The ALJ also held that Plaintiff was at fault in causing the overpayment incurred after July 2008 because at that point she had received notice of her reporting requirements. (*Id.*). Consequently, the ALJ found that the overpayment was not waived, and Plaintiff was liable for repayment of $24,204. (*Id.*, PAGEID #: 67).

## II.  STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also Quaynor v. Comm'r of Soc. Sec.*, No. CV 14-12258, 2015 WL 9487846, at *5 (E.D. Mich. Dec. 9, 2015), *adopted by*, No. 14-CV-12258, 2015 WL 9478026 (E.D. Mich. Dec. 29, 2015) ("With respect to waiving the recovery of an overpayment, '[t]he question of fault is one of fact and as such is subject to the substantial evidence standard of review.'") (citing *Doan v. Sec'y of Health and Human Servs.*, No. 86–5956, 1987 U.S. App. LEXIS 8723, at *2, 1987 WL 36143 (6th Cir. Jul. 7, 1987)). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## III. DISCUSSION

Under the Social Security Act, "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person . . . proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of Social Security[.]" 42 U.S.C. § 404(a)(1). There is, however, an exception to this rule where an individual "'is without fault' and 'such adjustment or recovery would defeat the purpose of [Title II of the Social Security Act] or would be against equity and good conscience.'" *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005) (quoting 42 U.S. C. § 404(b)). Put another way, in order to obtain a waiver of repayment, a claimant must establish that she is both: (1) without fault and (2) that recovery would defeat the purpose of the Title II or would be against equity and good conscience. *Quaynor v. Comm'r of Soc. Sec.*, No. CV 14-12258, 2015 WL 9487846, at *3 (E.D. Mich. Dec. 9, 2015), *adopted by*, No. 14-CV-12258, 2015 WL 9478026 (E.D. Mich. Dec. 29, 2015) (citing *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005)).

Here, the ALJ found that although Plaintiff was not at fault in causing the overpayment prior to July 2008 (Doc. 1-16, PAGEID #: 63), she was at fault in causing the overpayment incurred after July 2008 (*id.*, PAGEID #: 66). Further, the ALJ held that any recovery would not defeat the purpose of the SSA and would not be against equity and good conscience. Plaintiff alleges seven assignments of error based on these findings: (1) the Appeals Council erred by finding that recovery of the overpayment, incurred prior to July 2008, did not defeat the purpose of Title II of the Act; (2) the Appeals Council and ALJ erred by finding that recovery of the overpayment would not be against equity and good conscience; (3) the ALJ erred by finding

Plaintiff was at fault for causing her overpayment after July 2008; (4) the Appeals Council and ALJ erred by finding that Plaintiff did not present sufficient evidence to satisfy the specific circumstances set forth in 20 C.F.R. § 404.510(g) and thus she should not have been found to be at fault; (5) Plaintiff's circumstances satisfied 20 C.F.R. § 404.510(n) and thus she should not have been found to be at fault; (6) The Appeals Council and ALJ erred by finding that Plaintiff's circumstances supported an "at fault" finding based on 20 C.F.R. § 404.511(b); and (7) the SSA's policy and practice of not affording Plaintiff notice and any opportunity to be heard before declaring an overpayment violated her right to procedural due process under the Fifth Amendment of the United States Constitution. (Doc. 11 at 13–28). Although Plaintiff contends that "[t]he SSA letters were confusing so as to the amounts of overpayments" (Doc. 15 at 8), she does not challenge the amount of the alleged overpayment.

In sum, Plaintiff is challenging the ALJ's determination of whether recovery would defeat the purpose of Title II, whether recovery is against equity and good conscience, and whether Plaintiff is at fault. Each of these issues, in addition to Plaintiff's due process challenge, will be discussed in turn.

### A. Would recovery defeat the purpose of Title II of the SSA?

"Defeating the purpose of Title II means 'depriving a person of income required for ordinary and necessary living expenses.'" *Valley*, 427 F.3d at 391 (quoting 20 C.F.R. § 404.508(a)). "'[R]ecovery will defeat the purposes of Title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his *current* income ... to meet *current* ordinary and necessary living expenses.'" *Id.* (quoting 20 C.F.R.

§ 404.508(b)) (emphasis added). "In making this determination, the SSA may look to the individual's financial resources in addition to her or his income." *Id.* (citing § 404.508(a)).

Plaintiff argues that the ALJ's "defeat the purpose" assessment was not supported by substantial evidence for two reasons: (1) her prior financial information dating back to 2007 should have been considered and (2) her legal fees should have been considered in the analysis.[3]

*1. Financial Information*

Plaintiff explains that the ALJ and Appeals Council "restrict[ed] their review of Plaintiff's financial evidence within one year of [the ALJ's] May 3, 2017 Decision, instead of during the entire period when [Plaintiff] incurred her overpayment." (Doc. 11 at 14). Thus, according to Plaintiff, "the Appeals Council ignored 'substantial evidence' of significant expenses that [Plaintiff] incurred for herself and for her son when SSA assessed the overpayment." (*Id.* at 15). In support, Plaintiff notes her various household expenses in 2007–2008; she cites to statements that she was living paycheck to paycheck in 2011; and notes her expenses for her son's education and extracurricular activity when he was in high school several years prior. (*Id.* at 15–16). Plaintiff argues that because the ALJ incorrectly ignored these expenses, his decision was not supported by substantial evidence. (*Id.* at 16). In other words, Plaintiff believes that in conducting the "defeat the purpose" assessment, the ALJ should have considered her financial situation from December 2006 through July 2009, when her son was still her dependent. (*Id.* at 19).

---

[3] Plaintiff also argues that she overpaid her taxes by approximately $1,800 in 2009 due to an error on her SSA 1099. (Doc. 11 at 16–17). As the Commissioner explains, however, "[t]hat some of Plaintiff's benefits were used to pay her debts [overpayments] rather than being deposited into her bank account does not mean they are not income to her." (Doc. 12 at 16). Further, Plaintiff acknowledges that she "cannot recoup" the alleged overpayment in taxes (Doc. 11 at 9); thus, the Court need not consider the issue.

12

Under the Program Operations Manual System (POMS), "[a] defeat the purpose decision is based on a person's current circumstances. The financial information must be no more than 1 year old when the waiver decision is made." POMS GN 02250.115(A)(1) (available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0202250115). "Although the POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law, it is nevertheless persuasive." *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) (citing *Evelyn v. Schweiker*, 685 F.2d 351 (9th Cir. 1982)).

Based on this, the undersigned finds that the ALJ's decision to consider Plaintiff's financial information from the previous year only was in accordance with SSA policy. Plaintiff makes a curious argument that the ALJ "retroactively" applied POMS GN 2250.115. (Doc. 11 at 20). This argument, however, is unavailing, as the current version of the policy at issue became effective on October 3, 2005. POMS GN 02250.115(A)(1). Accordingly, there is no issue of retroactivity to consider.

As the Commissioner notes, Plaintiff does not argue that the ALJ misapplied the regulation, that the regulation is not entitled to deference, or that the ALJ erred in evaluating the financial information from the year prior to his decision. (*See* Doc. 12 at 16). Instead, Plaintiff simply argues that the ALJ should have considered her entire financial situation over the last eight years, without citing to any regulations or directives. Because the ALJ properly followed SSA policy, the undersigned finds that the ALJ did not err in considering financial evidence from only one year prior.

## 2. *Legal Fees*

Plaintiff argues that the ALJ "excluded consideration of relevant financial evidence within the one-year time constraint imposed by the [POMS] policy." (Doc. 11 at 20). More specifically, Plaintiff argues that the ALJ erred when he "refused to consider Plaintiff's legal fees of $21,000 that she incurred in prosecuting all her appeals[.]" (*Id.*). The Commissioner, on the other hand, contends that the ALJ reasonably concluded that he would not consider Plaintiff's legal fees because they were speculative. (Doc. 12 at 16). Further, the Commissioner noted that the "ALJ correctly recognized that SSA must approve Plaintiff's legal fees; that it had not yet done so; and nothing in the record establishes that SSA will find that the legal fees being charged to Plaintiff are reasonable." (*Id.* (citing HALLEX I-1-2-1).

The Court agrees with the Commissioner that Plaintiff's legal fees are speculative and not necessary to consider in the analysis. Plaintiff argues that the fees "are a legitimate debt, appropriate to be considered in determining Plaintiff's ability to repay the overpayment[,]" but cites no case law supporting that proposition. (Doc. 15 at 6). Thus, the undersigned finds that the ALJ did not err in declining to consider Plaintiff's speculative legal fees.

### B. Would recovery be against equity and good conscience?

Recovery of an overpayment is against equity and good conscience if an (1) individual changed her position for the worse, (2) relinquished a valuable right because of reliance upon the benefits, or (3) an individual did not receive the overpayment because she lived in a different household from the overpaid person. *Unice v. Berryhill*, No. 3:16-CV-02469, 2017 WL 2972172, at *6 (M.D. Tenn. July 12, 2017), *adopted by*, No. 3:16-02469, 2017 WL 4023030 (M.D. Tenn. Sept. 12, 2017) (citing 20 C.F.R. § 404.509(a)). "A claimant may also demonstrate

that recovery of an overpayment is against equity and good conscience where the individual 'accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration ... with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto ....'" *Valley*, 427 F.3d at 393–93 (quoting 20 C.F.R. §§ 404.510a; 404.512). Further, an individual's financial circumstances "are not material to a finding of against equity and good conscience." *Id.* (quoting 20 C.F.R. § 404.509(b)).

Plaintiff argues that despite the ALJ's finding, she used and relied on her benefit payments "for her son's education and extracurricular activities"—such as golf, hockey, and lacrosse—that she could not otherwise afford. (Doc. 11 at 21). As the ALJ noted, however, these past expenditures did not involve relinquishing a valuable right or represent the type of ongoing obligation that would make recovery against good equity and conscience. (Doc. 1-16, PAGEID #: 66).

Plaintiff cites an example from the SSA's regulations that she argues is on-point. The Commissioner explains how the two examples meaningfully differ:

> The [SSA] example is of a widow whose anticipated award of monthly benefits allows her to enroll her daughter in private school. The point of that example, however, is that if SSA used her benefits to recover an overpayment, the widow would still have an obligation to pay the private school tuition. Plaintiff incurred no such obligation by using her benefits to enable her son to participate in school sports. The ALJ reasonably concluded that Plaintiff had not presented evidence that she had changed her position for the worse such that recovery for the overpayment would be against equity and good conscience.

(Doc. 12 at 17–18).

This Court agrees. Plaintiff's expenditures on her son's sports activities do not constitute the type of ongoing obligation that makes recovery of an overpayment against equity and good conscience. Consequently, the ALJ's analysis was supported by substantial evidence.

### C. Was Plaintiff at fault?

Social Security regulations explain the meaning of "fault" as follows:

> Fault as used in without fault ... applies only to the individual. Although the administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual ... from liability or repayment if such individual is not without fault. In determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, education, or linguistic limitations (including any lack of facility with the English language) the individual has. What constitutes fault ... on the part of the overpaid individual ... depends upon whether the facts show that the incorrect payment to the individual ... resulted from:
>
> > (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
> >
> > (b) Failure to furnish information which he knew or should have known to be material; or
> >
> > (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. In the context of an overpayment case, a finding of fault "does not imply a finding of bad faith or improper motive, but can be the result of an honest mistake." *Carsley v. Comm'r of Soc. Sec.*, No. 112CV01102, 2017 WL 9440386, at *4 (W.D. Tenn. Mar. 3, 2017), *adopted in part*, No. 12-1102, 2017 WL 2610520 (W.D. Tenn. June 16, 2017) (quoting *Mary H. Doan v. Sec'y of Health & Human Servs.*, No. 86-5956, 1987 WL 36143, at *1 (6th Cir. 1987)).

Here, the ALJ found Plaintiff was not at fault for any overpayment prior to July 2008 but was at fault for overpayment proceeding that date. The undersigned notes that the record casts

serious doubt on when Plaintiff was first informed that her employment earnings would have an effect on her receipt of mother's benefits, and if she was informed on the specific amount of the earnings limit. Regardless of the ALJ's findings, the undersigned is sympathetic to the administrative difficulties that Plaintiff has endured over the last decade. Indeed, Plaintiff has spent the last ten years attempting to understand better her overpayment and engaging in numerous appeals. In some circumstances, courts have considered these types of procedural difficulties in analyzing fault. *See Short v. Sec. of HHS*, No. EC 87-25-D-D, 1989 WL 280359, at *3 (N.D. Miss. Sept. 1, 1989) ("The evidence fails to establish that the plaintiff was at fault in this administrative nightmare."); *Carsley*, 2017 WL 9440386, at *8 ("The law likewise spares the claimant from bearing the burden of an 'administrative nightmare' such as the one which the Court recommends Plaintiff has already endured and has unnecessarily borne for almost a decade."). But, because the Court upholds the ALJ's determinations regarding the "defeats the purpose" and equity and good conscience analysis, whether Plaintiff was "without fault" in accepting the overpayment is immaterial. *See Valley*, 427 F.3d at 393. Thus, any potential error by the ALJ in his determination of fault—whether it be his ultimate decision, or the factors used to reach his decision—is harmless. *See Valley*, 427 F.3d at 391 (quoting 42 U.S. C. § 404(b)).

### D. Have Plaintiff's due process rights been violated?

Finally, Plaintiff argues that the SSA deprived her of her rights to due process under the Fifth Amendment of the United States Constitution because it never provided her "with notice and opportunity to be heard or respond before notifying her that she had an overpayment." (Doc. 11 at 28). Specifically, Plaintiff argues:

> Plaintiff learned for the first time of SSA's claim that she exceeded the agency's earnings limit for 2007 when she received SSA's July 15, 2008 letter. (A.R. 508,

17

> File Ex. 5/2). But before she received this letter, SSA never gave her notice that she had an earnings limit that year.
>
> Other SSA letters followed the same protocol and did not notify Plaintiff of her earnings limit until a year and a half after she received benefits. SSA failed to provide Plaintiff with any opportunity to dispute the overpayment or the amount of the overpayment before it was assessed against her.

(Doc. 11 at 28).

Plaintiff's arguments are without merit. First, Plaintiff's application for benefits informed Plaintiff that the SSA would use earnings reported by her employers to adjust her benefits and that it was her responsibility to ensure that the SSA had accurate information about her earnings. (Tr. 489). Moreover, Plaintiff's January 29, 2006 "Notice of Award" explicitly stated that the benefits were based on the information she provided and: "If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away." (Tr. 495). The "Notice of Award" also directed Plaintiff's attention to an enclosed pamphlet "which explains how work could change payments." (*Id.*).

Second, once Plaintiff was notified of her overpayment in July 2008, she was afforded extensive opportunities to dispute the overpayment before it was assessed. Indeed, the letter begins by saying "[p]lease read the rest of this letter carefully. It explains . . . what to do if you disagree with any of our decisions." (Tr. 44). Additionally, the letter gave Plaintiff thirty days to provide evidence that not all of her earnings should count against the earning limit. (*See* Tr. 44–46). The letter also provided extensive directions to Plaintiff on actions she should take if she disagreed with the decision:

> If you disagree with our decision that we overpaid you, you have the right to ask us to look at your case again. This is called an appeal. Even if you agree that you were overpaid, you have the right to ask us not to collect the overpayment. This is called waiver. You may ask for an appeal or waiver, or both. The forms for

> appeal and waiver are available from any Social Security office and are also available on our Website. If you ask for wavier or appeal in the next 30 days, you will not have to pay us back until we make a decision about your case. Unless we hear from you within 30 days, we will withhold benefits as we said earlier in this letter.

(Tr. 48–49).

Finally, the SSA did not withhold benefit payments until October 2008, giving Plaintiff the appropriate amount of time to ask for an appeal or wavier. Consequently, Plaintiff's argument that she was denied due process because the SSA failed to provide her an opportunity to dispute the overpayment before it was assessed is not borne out by the facts. In short, Plaintiff has not set forth any basis for finding a deprivation of her rights to due process and equal protection. *Unice v. Berryhill*, No. 3:16-CV-02469, 2017 WL 2972172, at *8–9 (M.D. Tenn. July 12, 2017), *adopted by*, No. 3:16-02469, 2017 WL 4023030 (M.D. Tenn. Sept. 12, 2017).

## IV.   CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 11) be **OVERRULED** and that judgment be entered in favor of Defendant.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.


Date: August 17, 2018                            /s/ Kimberly A. Jolson
                                                               KIMBERLY A. JOLSON
                                                               UNITED STATES MAGISTRATE JUDGE