# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

MELISSA COHAN,

    **Plaintiff,**

  v.                                        Case No. 2:18-cv-24
                                              Judge Graham

**NANCY A. BERRYHILL,**                     Magistrate Judge Jolson
**Acting Commissioner of**
**Social Security,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Melissa Cohan, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (the "Commissioner") finding that Ms. Cohan was overpaid benefits and not entitled to waiver of the recovery of the overpayment. This matter is before the Court for consideration of Ms. Cohan's August 29, 2018, objections (ECF No. 18) to the August 17, 2018, Report and Recommendation of Magistrate Judge Jolson (ECF No. 16) recommending that Ms. Cohan's Statement of Errors (ECF No. 11) be overruled, and that judgment be entered in the Commissioner's favor. For the reasons set forth below, the Court **OVERRULES** Ms. Cohan's objections (ECF No. 18) and **ADOPTS** the Report and Recommendation issued by Magistrate Judge Jolson (ECF No. 16).

**I.**    **Background**

On January 24, 2006, Ms. Cohan applied for mother's insurance benefits from the Social Security Administration ("SSA") following the death of her husband. (Admin R. 488–90). The application she submitted stated the following:

> I understand that SSA will use the earnings reported to SSA by my employer(s) and my self-employment tax return (if applicable) as the report of earnings required by law, to adjust benefits under the earnings test. I also understand that it is my

1

responsibility to ensure that the information I give SSA concerning my earnings is correct. I also understand that I must furnish additional information as needed when my benefit adjustment is not correct based on the earnings on my record.

(*Id.* at 489).

Ms. Cohan later obtained employment in February 2007 and claims she visited her local SSA office sometime between February and April 2007 to report her work activity. (Cohan Aff. ¶¶ 4, 6–7, Admin. R. 617; Cohan Tr. 12, Admin. R. 864). Following her visit to the SSA office, Ms. Cohan had no further communication with the SSA concerning her work activity until July 2008. (Cohan Tr. 13–14, Admin. R. 865–66). On July 15, 2008, Ms. Cohan received a letter from the SSA informing her that due to her 2007 earnings of $31,778.00, she was overpaid $9,405.00. (Admin. R. 44).

The letter further explained to Ms. Cohan that the 2007 earnings limit was $12,960, and "[e]ach year there is a limit to the amount you can earn for the year and still qualify for full benefits. If you earn over the allowed amount for the year, we usually withhold $1 in benefits for every $2 you earn above the limit." (*Id.* at 45, 50). The letter also included a section entitled, "How Work Affects Your Social Security" further referencing "a limit to the amount you can earn for the year and still qualify for full benefits." (*Id.* at 50). On the same page, a subsection entitled, "If Your Earnings Change" advised Ms. Cohan:

> To help us pay you correctly you should report changes in your earnings to any Social Security office. Any time during the year, if you see that your earnings will be different from what you had estimated or what was last reported for you, you should call to let us know.

(*Id.* at 50).

A worksheet attached to the letter provided Ms. Cohan with a detailed explanation of how the overpayment was calculated based on her 2007 earnings. (*Id.* at 51). To recover the overpayment of benefits to Ms. Cohan, the SSA stated it would withhold benefits payments beginning September 2008, and resume payments to her in April 2009. (*Id.* at 45).

2

Though Ms. Cohan's benefits resumed in April 2009, she later received another letter from the SSA on August 20, 2009. (*Id.* at 69). This letter stated that due to Ms. Cohan's 2008 earned income of $39,946, she exceeded the annual limit of $13,560 and was overpaid $13,193. (*Id.* at 59–60). The letter once again described how work affects social security benefits. (*Id.* at 65). The letter also detailed the SSA's withholding of benefits payments beginning October 2009 and further explained payments would resume in July 2010. (*Id.* at 60).

On September 3, 2009, Ms. Cohan timely filed a request for reconsideration, appealing the SSA's overpayment determination and requesting a waiver of her repayment obligation. (*Id.* at 335–49). On November 27, 2009, the SSA responded with an explanation of the overpayment of benefits to Ms. Cohan, informing her that her total overpayment for 2007 and 2008 equaled $16,564.00. (*Id.* at 352). The letter also relayed that Ms. Cohan was incorrectly paid $7,640.00 for 2009, which may be adjusted after she filed her 2009 federal income tax return. (*Id.*). An enclosed payment worksheet laid out all of the benefits paid to Ms. Cohan during the relevant time period and what should have been paid to her. (*Id.* at 354–59).

On December 10, 2009, the SSA made its waiver determination and found that Ms. Cohan was not entitled to waiver of the recovery of her overpayment. (*Id.* at 82–83). Following the SSA's determination, Ms. Cohan filed a December 22, 2009 request for a hearing by an Administrative Law Judge. (*Id.* at 574). Ms. Cohan stated she disagreed with the SSA's determination of her claim, challenging the amount she owed and the SSA's finding of fault. (*Id.* at 574).

On February 4, 2010, the SSA notified Ms. Cohan via another letter that she was mistakenly overpaid mother's benefits after her child was no longer of eligible age. (*Id.* at 120, 573). The letter stated that the October 2009 through February 2010 overpayment amount of

3

$6,292.00 was added to her previous overpayment amount for an overpayment total of $22,856.00. (*Id.*).

On February 11, 2010, Ms. Cohan wrote to the SSA beseeching the agency for assistance in resolving her overpayment issue. (*Id.* at 119, 571). She once again stated her disagreement with the amount owed and reiterated her belief that the overpayment was not her fault. (*Id.*). Ms. Cohan also reminded the SSA of her previously filed request for a hearing by an Administrative Law Judge. (*Id.*).

On January 21, 2011, the SSA issued a notice of reconsideration finding its previous overpayment determination to be correct. (*Id.* at 366). The reconsideration determination provided a detailed analysis of the overpayment issue and explained the SSA's rationale in making its determination that Ms. Cohan's earned income exceeded the annual earnings limit. (*Id.* at 368–70).

On February 22, 2011, Ms. Cohan filed another request for the SSA to waive collection of the overpayment maintaining her disagreement with the overpayment amount and her belief that she was not at fault for the overpayment. (*Id.* at 127–35). On May 9, 2011, Ms. Cohan received a hearing before Administrative Law Judge K. Michael Foley ("ALJ Foley") (*Id.* at 820), who issued an unfavorable decision on July 18, 2011. (*Id.* at 10–11). ALJ Foley found that Ms. Cohan was overpaid $24,204.00 in benefits due to work performed over the allowable earnings limit from 2007–2009. (*Id.* at 16). ALJ Foley did not waive recovery of the overpayment, as he could not find her "without fault" due to perceived untruthful and inconsistent statements and further determined that recovery would not be against equity and good conscience. (*Id.* at 19).

Ms. Cohan disagreed with ALJ Foley's decision and requested review by the Appeals Council. (Compl., Ex. 16, ECF No. 1-16 at 59). The Appeals Council declined jurisdiction, and

Ms. Cohan sought relief in this Court on April 15, 2013. (*Cohan v. Comm'r of Soc. Sec.,* 2:13-cv-809, ECF No. 1). After finding "that the essential factual issues [were] not . . . resolved in this case" and remand therefore required, the Court granted the Commissioner's Motion for Voluntary Remand (2:13-cv-809, ECF No. 25) on January 29, 2015.

The Appeals Council remanded Ms. Cohan's case to an Administrative Law Judge to evaluate the administrative record and assess whether Ms. Cohan reported her work activities and earnings to her local SSA office during the overpayment period and, if not, whether her failure to report or accept an erroneous payment was due to one of the specific circumstances articulated under 20 C.F.R. § 404.510. (Admin. R. 459–60). On May 3, 2017, Administrative Law Judge Paul Yerian (the "ALJ") concluded that Ms. Cohan was overpaid benefits, and recovery of the overpayment was not waived. (Compl., Ex. 16, ECF No. 1-16 at 60). On November 14, 2017, the Appeals Council once again declined jurisdiction, making the ALJ's decision the final decision of the Commissioner. (Admin. R. 299–303).

Ms. Cohan filed the instant case on January 9, 2018. (ECF No. 1). On August 17, 2018, Magistrate Judge Jolson issued her Report and Recommendation that the Court enter judgment in the Commissioner's favor. (ECF No. 16). Magistrate Judge Jolson found that substantial evidence supported the ALJ's determination that Ms. Cohan failed to meet the SSA's two-part criteria for waiver and was therefore not entitled to a waiver of the recovery of the overpayment amount. (*Id.* at 265). Magistrate Judge Jolson further determined that Ms. Cohan had failed to set forth any facts in support of a finding that she was deprived of due process and equal protection. (*Id.* at 268). Ms. Cohan filed her objections to Magistrate Judge Jolson's Report and Recommendation on August 29, 2018. (ECF No. 18).

## II.     Standard of Review

Ms. Cohan timely filed her objections. If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). As required by 28 U.S.C. § 636(b)(1)(C), the Court will make a *de novo* review of those portions of the Report and Recommendation to which Ms. Cohan specifically objects.

The Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether that decision was made pursuant to proper legal standards. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2014). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). The Court will uphold the Commissioner's decision if substantial evidence supports the conclusion reached, even if the evidence supports a different conclusion. 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Gayheart*, 710 F.3d at 374. But "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.,* 582

F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)).

**III.     Discussion**

The ALJ concluded that the overpayment amount of $24,204.00 was correct. (ECF No. 1-16 at 60).  Ms. Cohan does not challenge the overpayment amount. (ECF No. 16 at 260). Therefore, the core issue remaining for the Court's consideration is whether Ms. Cohan is entitled to a waiver of the recovery of the overpayment amount.  (ECF No. 1-16 at 60).

The Social Security Act (the "Act") mandates recovery of an overpayment to beneficiaries, but also provides for a waiver of that recovery where an individual is: 1) without fault and 2) such recovery would either defeat the purpose of Title II of the Act or be against equity and good conscience. 42 U.S.C. § 404(b); *see also Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005) (discussing the exception to the Act's mandatory repayment obligation).  "[T]he claimant bears the burden of proving she was 'without fault' and that collection of the overpaid benefits would defeat the purpose of the subchapter or would be against equity and good conscience." *Unice v. Berryhill*, No. 3:16-cv-02469, 2017 U.S. Dist. LEXIS 107858, at *8 (M.D. Tenn. July 12, 2017).  To obtain a waiver of the overpayment amount, Ms. Cohan must satisfy both waiver criteria. *Quaynor v. Comm'r of Soc. Sec.*, Civil Action No. 14-12258, 2015 U.S. Dist. LEXIS 172457, at *9 (E.D. Mich. Dec. 9, 2015), *adopted by*, No. 14-CV-12258, 2015 WL 9478026 (E.D. Mich. Dec. 29, 2015).

Ms. Cohan insists that she meets the waiver criteria.  Specifically, Ms. Cohan contends that she is without fault for any overpayments received before[1] and after July 2008, and that any

---

[1] The Commissioner does not disagree that Ms. Cohan was without fault prior to July 2008.  (ECF No. 23 at 331).

7

recovery of those payments would not only defeat the purpose of Title II of the Act but would also be against equity and good conscience. (ECF No. 18 at 286). Ms. Cohan requests that this Court issue an Order of No Remand, grant her overpayment waiver, order the SSA to remit to her the sum of $1,800.00 for unnecessary taxes caused by an allegedly erroneous 1099, award attorneys' fees, and enter judgment modifying the decision of the Commissioner. (*Id.* at 273).

In support of her request, Ms. Cohan offers the following eleven objections to Magistrate Judge Jolson's Report and Recommendation: 1) Pursuant to *Carsley v. Comm. of Soc. Sec.,* No. 112CV01102, 2017 WL 9440386 (W.D. Tenn. Mar. 3, 2017) and *Short v. Sec. of HHS*, No. EC 87-25-D-D, 1989 WL 280359, (N.D. Miss. Sept 1, 1989), the Magistrate's Report & Recommendation erred by not finding Plaintiff without fault because of SSA's mismanagement and errors causing Plaintiff to believe she was entitled to benefits causing her to change her position; thereby causing the repayment of the overpayment would defeat the purpose of the Act and be against equity and good conscience; 2) the Magistrate's Report and Recommendation failed to recognize that [the] ALJ erred by finding that recovery of the overpayment, incurred prior to July 2008, does not defeat the purpose of Title II of the Social Security Act (20 C. F. R. § 404.508(a) and (b)); 3) the Magistrate's Report and Recommendation failed to recognize that ALJ ignored "substantial evidence" in the record to support his finding that recovery of the overpayment incurred prior to July 2008 did not defeat the purpose of Title II of the Social Security Act; 4) the Magistrate's Report and Recommendation failed to recognize the ALJ's retroactive application of POMS GN 02259.115(A)(1) impaired Plaintiff's ability to present evidence showing that recovery if [sic] the overpayment would defeat the purpose of Title VII of the Social Security Act; 5) the Magistrate's Report and Recommendation failed to recognize the ALJ disregarded relevant financial evidence during the one-year period covered under POMS GN

02259.115(A)(1); 6) the Magistrate's Report and Recommendation failed to recognize the ALJ erred by finding that recovery of the overpayment would not be against equity and good conscience; 7) the Magistrate's Report and Recommendation failed to recognize the ALJ erred by finding Plaintiff was at fault for causing her overpayment after July 2008; 8) the Magistrate's Report and Recommendation failed to recognize the ALJ erred by finding that Plaintiff did not present sufficient evidence to satisfy the specific circumstances set forth in 20 C.F.R. § 404.510(g); 9) the Magistrate's Report and Recommendation failed to recognize the Plaintiff's circumstances satisfied 20 C.F.R. § 404.510(n); 10) the Magistrate's Report and Recommendation failed to recognize the ALJ erred by finding that Plaintiff's circumstances justify an "at fault" finding based on 20 C.F.R. § 404.511(b); 11) the Magistrate's Report and Recommendation failed to recognize the SSA's policy and practice of denying Plaintiff notice and an opportunity to be heard before declaring an overpayment violated her right to procedural due process under the Fifth Amendment of the United States Constitution. (ECF No. 18 at 274–76).

Ms. Cohan's lengthy objections to the Report and Recommendation can be condensed as assertions that Magistrate Judge Jolson erred by: 1) upholding the ALJ's "defeat the purpose" and "equity and good conscience" determinations; 2) concluding that whether Ms. Cohan is at fault is immaterial in light of these determinations, and 3) finding that Ms. Cohan's due process rights were not violated.

### A. Whether Recovery of the Overpayment Would Defeat the Purpose of Title II

Finding Ms. Cohan to be without fault prior to July 2008, the ALJ assessed whether recovery of any overpayments made during that period would defeat the purpose of Title II of the Act. "Defeating the purpose of Title II means 'depriving a person of income required for ordinary and necessary living expenses.'" *Valley*, 427 F.3d at 391 (quoting 20 C.F.R. § 404.508(a)).

9

"'[R]ecovery will defeat the purposes of Title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his *current* income ... to meet *current* ordinary and necessary living expenses.'" *Id.* (quoting 20 C.F.R. § 404.508(b)) (emphasis added). In assessing the second prong of the SSA's waiver criteria, the ALJ found that recovery would not defeat the purpose of Title II of the Act, because Ms. Cohan has sufficient income or financial resources for more than her necessary and ordinary needs. (*Id.* at 314). The ALJ reached this conclusion by accounting for Ms. Cohan's monthly expenses and income and finding she had a remaining balance of $436.46 each month. (ECF No.1-16 at 65).

In her Report and Recommendation, Magistrate Judge Jolson found that substantial evidence supports the ALJ's "defeat the purpose" assessment and agreed that neither Ms. Cohan's prior financial information dating back to 2007 nor her legal fees should have been considered in the ALJ's analysis of Ms. Cohan's current monthly income and expenses. (ECF No. 16 at 261–63). Magistrate Judge Jolson also noted that the Court need not consider the allegedly erroneous 1099 Ms. Cohan received, as Ms. Cohan admits she "cannot recoup" the alleged $1,800 in unnecessary taxes. (ECF No. 16 at 261 n.3) (quoting ECF No. 11 at 184).

1. **Limited Review of Financial Information**

Ms. Cohan once again argues that substantial evidence does not support the ALJ's "defeat the purpose" assessment. (ECF No. 18 at 300). She maintains that the ALJ should not have limited his review of her income and expenses to the one-year period prior to his May 3, 2017 decision, and that Magistrate Judge Jolson erred in failing to recognize this allegedly erroneous standard. (*Id.* at 301). Ms. Cohan insists that both the ALJ and Magistrate Judge Jolson should have considered the period in which she incurred her overpayment in assessing whether she needed substantially all of her income to meet her ordinary and necessary living expenses. (*Id.* at 302).

Specifically, she argues that they ignored the relevant time period from December 2006 through July 2009 when her son was still her dependent and when she was purportedly living paycheck to paycheck. (*Id.* at 301–02).

But 20 C.F.R. § 404.508(b) emphasizes an analysis of a claimant's "current ordinary and necessary living expenses" when determining whether recovery of an overpayment would defeat the purpose of Title II. The Program Operations Manual System (POMS), Application of Defeat the Purpose Provisions, further clarify that "[a] defeat the purpose decision is based on a person's current circumstances," and therefore, the "financial information must be no more than 1 year old when the waiver decision is made." POMS GN 02250.115(A)(1) (available at http://policy.ssa.gov/poms.nsf/lnx/0202250115). Though 20 C.F.R. § 404.508(a) states, "[a]n individual's ordinary and necessary expenses include . . . [e]xpenses for the support of others whom the individual is legally responsible," Ms. Cohan's son was no longer her dependent during the year prior to the ALJ's May 3, 2017 decision, and therefore any expenses on his behalf are inapplicable to the "defeat the purpose" analysis. *Id.* at § 404.508(a)(3).

The SSA's policy makes clear that the ALJ was only to consider financial information from one year prior to his May 3, 2017 decision. Any consideration of earlier financial information would be contrary to the applicable agency rules and regulations concerning a "defeat the purpose" assessment. Therefore, there is no disagreement that the ALJ properly applied the correct standard in assessing Ms. Cohan's financial information, and Magistrate Judge Jolson correctly upheld his consideration of the relevant financial information[2] in his "defeat the purpose" assessment.

---

[2] Though Ms. Cohan asserts that the taxes, "[she] was forced to pay because [the] SSA erroneously reported her benefit amount in 2009" were also ignored in both the ALJ's and Magistrate Judge's consideration of her financial information, the Court once again need not consider this issue. Not only is the $1800 she alleges she overpaid in taxes in 2009 well before the one-year time period prescribed by POMS GN 02250.115(A)(1), but as the Commissioner explains, "2009 was a year when [the] SSA withheld some of Plaintiff's benefits to recover her first overpayment." (ECF No. 23 at 333). Just because "some of Plaintiff's benefits were used to pay her debts rather than being deposited into her bank account does not mean that they were not income to her." (*Id.* at

11

## 2. Application of POMS GN 02250.115(A)(1)

Ms. Cohan also argues that Magistrate Judge Jolson erred by not "recognizing the ALJ's retroactive application of POMS GN 02250.115(A)(1)" and its impairment on her ability to present evidence that recovery of the overpayment would defeat the purpose of the Act (ECF No. 18 at 303), but this argument remains unavailing. The effective date of the current version of POMS GN 02250.115 is February 17, 1998, and all of the dates relevant to the overpayment period are from December 2006 forward. Furthermore, the ALJ reached his decision concerning whether Ms. Cohan was entitled to waiver of recovery of the overpayment on May 3, 2017. Against these facts, there is no issue of any retroactive application of the applicable policy for this Court to consider.

## 3. Legal Fees

Alternatively, Ms. Cohan claims that even within the one-year timeframe specified in the POMS policy, the ALJ improperly excluded her legal fees from his evaluation of relevant financial evidence. (*Id.* at 306). She asserts that Magistrate Judge Jolson erred by adopting the ALJ's refusal to acknowledge her legal fees as legitimate debt, thereby ignoring the weight of the evidence. (*Id.* at 306–07). Ms. Cohan argues that because she incurred attorneys' fees during the one-year period before the ALJ's review, "they are relevant to determining [her] ability to pay the overpayment." (*Id.* at 306). The Court disagrees.

Not only are legal fees not included among 20 C.F.R. § 404.508(a)'s examples of ordinary and necessary expenses, but the SSA informed Ms. Cohan that if she hired someone to represent her, "we must approve the fee before he or she can collect." (Admin. R. 64, 76). The Act requires

---

333–34). Furthermore, as earlier discussed, Ms. Cohan has already admitted she "cannot recoup" the alleged unnecessary taxes. (ECF No. 16 at 261 n.3) (quoting ECF No. 11 at 184). Therefore, the Court need not discuss this point any further.

a representative of a claimant before the Commissioner to seek the Commissioner's approval before he or she can charge and collect a fee for services. 42 U.S.C. § 406(a). The SSA provided Ms. Cohan with a pamphlet entitled, "Your Right [t]o Representation," which explained under the heading, "What your representative may charge you," that, "[t]o charge you a fee for services, your representative first must file either a fee agreement or a fee petition with us." (*Id.* at 109). The pamphlet further notified Ms. Cohan that, "Your representative cannot charge you more than the fee amount we approve." (*Id.*). The SSA's Hearings, Appeals, and Litigation Law Manual (HALLEX) section entitled, "Representative's Fees Subject to SSA's Authorization" also states, "A representative, attorney, or non-attorney must obtain the Social Security Administration's (SSA's) authorization to charge and collect a fee for services provided in proceedings before the SSA." HALLEX I-1-2-4 (available at https://www.ssa.gov/OP_Home/hallex/I-01/I-1-2-4.html).

Ms. Cohan has failed to provide evidence that her counsel sought the Commissioner's approval for any fees charged during her representation. Moreover, she has neglected to prove that the Commissioner would find such fees reasonable as specified in 42 U.S.C. § 406(a). Finally, she points to no legal or regulatory authority supporting her assertion. Thus, the ALJ correctly excluded Ms. Cohan's speculative legal fees in his evaluation of relevant financial evidence, and Magistrate Judge Jolson did not err in declining to consider them as relevant financial evidence in her consideration of the ALJ's "defeat the purpose" determination.

After reviewing the relevant financial evidence in the administrative record, the Court finds that substantial evidence supports the ALJ's determination that recovery would not defeat the purpose of Title II of the Act. Accordingly, the Court overrules Ms. Cohan's objections concerning Magistrate Judge Jolson's upholding of the ALJ's "defeat the purpose" determination.

### B. Whether Recovery is Against Equity and Good Conscience

The ALJ further determined that recovery would not be against equity and good conscience, because Ms. Cohan provided no evidence that she changed her position or relinquished a valuable right because of reliance upon notice that a payment would be made or because of the overpayment itself, as specified in 20 C.F.R. § 404.509. (*Id.* at 315). The regulation provides examples of situations where recovery would be against equity and good conscience. Ms. Cohan maintains that her situation fits squarely within the first example provided. (ECF No. 18 at 308).

The first example in § 404.509(b), includes a widow who was awarded benefits for herself and her daughter, and in reliance on those benefits, enrolled her daughter in private school. After receiving payments for almost a year, the SSA determined the widow and her daughter were incorrectly awarded benefits they were not eligible for, but the widow had no other funds with which to pay her daughter's private school costs. *Id.* Having enrolled her daughter in private school and thereby incurring a financial obligation which the widow relied on her benefits to fulfill, the widow was in a worse position financially than if she and her daughter had never been entitled to benefits. *Id.* In this example, the recovery of payments would be against equity and conscience. *Id.*

The ALJ disagreed with Ms. Cohan's assertion that recovery of the overpayment in this case would be against equity and good conscience. (Admin. R. at 315). Unlike the widow depicted in example one, the ALJ determined that by purchasing sports equipment for her son, Ms. Cohan did not incur a financial obligation, such as a purchase agreement, supporting a finding that she changed her position for the worst. (*Id.*). The ALJ likewise found that Ms. Cohan's decision to pay costs associated with her son's extracurricular activities did not constitute relinquishment of a valuable right. (*Id.*). Magistrate Judge Jolson found that substantial evidence supports the ALJ's

"equity and good conscience" analysis, as she also determined that Ms. Cohan's past expenditures on her son's sports activities do not constitute the type of ongoing obligation that makes recovery of an overpayment against equity and good conscience. (ECF No. 16 at 265).

Ms. Cohan once again disagrees and contends that Magistrate Judge Jolson erred in upholding the ALJ's decision, because, "[she] provided her son with the best possible opportunities to succeed in school and gain a well-rounded experience. Pursuing recovery of an overpayment under these circumstances is against equity and good conscience." (ECF No. 18 at 308). Though Ms. Cohan still insists that her expenditures on her son's extracurricular activities are consistent with the example of a widow enrolling her daughter in private school as provided in 20 C.F.R. § 404.509, the Court disagrees. The point of that example is that the widow incurred an ongoing financial obligation to pay her daughter's private school expenses, and if the SSA recovered the overpayment, the widow would still owe tuition and other related fees and be in a worse position financially than if she and her daughter had never been entitled to benefits. Ms. Cohan claims she incurred a similar obligation to, "enhance her son's educational experience," and that by purchasing equipment for her son's school sports activities, "[t]hose purchases are no different compared to a purchase agreement." (*Id.* at 309).

The Court does not reach the same conclusion. Despite Ms. Cohan's insistence, receipts for sports equipment do not constitute the type of ongoing financial obligation contemplated by the regulation. Ms. Cohan's situation further differs from the example of the widow, as the widow had no other funds with which to pay her daughter's private school expenses. Whereas while her son was in school, Ms. Cohan received additional monthly income through her employment.

While "recovery of the overpayment may cause [Ms. Cohan] some financial hardship, [it] is not enough to make the recovery inequitable under the regulation." *Posnack v. Sec'y of Health*

15

*& Human Servs.*, 631 F. Supp. 1012, 1016 (E.D.N.Y. 1986) (citing *Orlandini v. Weinberger*, 421 F. Supp. 586, 591 (E.D. Wis. 1976). Substantial evidence supports the ALJ's finding that recovery would not be against equity and good conscience, as Ms. Cohan provides no evidence that she changed her position or relinquished a valuable right because of reliance upon notice that a payment would be made or because of the overpayment itself, as specified in 20 C.F.R. § 404.509. Therefore, the Court overrules Ms. Cohan's objections asserting Magistrate Judge Jolson erred by upholding the ALJ's "equity and good conscience" determination.

**C. Fault**

Though the ALJ determined Ms. Cohan was without fault prior to July 2008, the ALJ could not find Ms. Cohan without fault for any post July 2008 overpayments made, due to her receipt of the SSA's July 15, 2008 letter, informing her about the general yearly earnings limit and specific 2007 limitation. (Admin. R. 315). The ALJ reasoned Ms. Cohan was well aware that any continued work activity might affect future benefits and result in an overpayment. (*Id.*). As Magistrate Judge Jolson upheld the ALJ's "defeat the purpose" and "equity and good conscience" determinations, she declined to address the ALJ's fault determination, as the ALJ's finding that Ms. Cohan could not meet the second prong of 42 U.S.C. 404(b) precluded any availability of the waiver Ms. Cohan seeks. (*Id.* at 266).

Here, the Court finds the same. While waiver may be available if a person is found to be "without fault," this alone is insufficient. "An individual who is without fault in receiving an overpayment may still be required to repay, provided such a requirement 'would [not] defeat the purpose of this [Act nor] would be against equity and good conscience.'" *Blackwell v. Sec'y of Health & Human Servs.*, 869 F.2d 1488 (6th Cir. 1989) (quoting 42 U.S.C. 404(b)). This Court has already established that recovery would neither defeat the purpose of the Act nor be against

16

equity and good conscience, and Ms. Cohan therefore cannot satisfy the second portion of the two-part waiver criteria. Due to her inability to establish the second prong, Ms. Cohan cannot satisfy her burden of meeting the SSA's two-part waiver criteria, and thus cannot qualify for waiver of recovery of the overpayment amount.

Thus, it is no longer necessary to address whether Ms. Cohan is at fault for any post July 2008 overpayments made, because any potential errors relating to the ALJ's fault determination would not alter the conclusion that Ms. Cohan is unable to satisfy the SSA's two-part waiver criteria. Therefore, the Court once again declines to address this point and finds that not only does substantial evidence support the ALJ's waiver determination, but that Magistrate Judge Jolson correctly upheld the ALJ's finding that Ms. Cohan did not meet the SSA's criteria for waiver.[3] Consequently, Ms. Cohan's objections concerning whether she was "at fault" are overruled.

### D. Whether the SSA Violated Ms. Cohan's Right to Procedural Due Process

Ms. Cohan argues that the SSA "never provided her with notice and opportunity to be heard or respond before notifying her that she had an overpayment." (ECF No. 18 at 315). She also claims that she never received "any opportunity to dispute the overpayment or the amount of the overpayment before it was assessed against her." (*Id.*). Magistrate Judge Jolson correctly found these arguments lack merit.

Ms. Cohan was on notice from the date she submitted her application for benefits that the SSA would adjust her benefits based on reported earnings and that she had a duty to ensure that

---

[3] In her first objection, Ms. Cohan asserts that pursuant to *Carsley v. Comm. of Soc. Sec.*, No. 112CV01102, 2017 WL 9440386 (W.D. Tenn. Mar. 3, 2017) and *Short v. Sec. of HHS*, No. EC 87-25-D-D, 1989 WL 280359, (N.D. Miss. Sept 1, 1989), Magistrate Judge Jolson's Report and Recommendation erred by not finding her without fault due to the SSA's mismanagement and errors, which caused her to believe she was entitled to benefits, which then caused her to change her position, and would therefore defeat the purpose of the Act and be against equity and good conscience. While conflating different waiver criteria, it appears that Ms. Cohan is asking the Court to spare her from the "administrative nightmare" she has endured for over a decade and "rectify the damage done." Unfortunately, the Court cannot offer her the relief she seeks. Magistrate Judge Jolson correctly upheld the ALJ's waiver determination, and in doing so, did not err pursuant to either of these cases.

the SSA had accurate earnings information. (Admin. R. 489). Furthermore, the SSA's policy on the due process requirements for Title II cases states, "Due process requires that before [the] SSA takes an adverse action that affects continued receipt of Title II benefits, we provide the beneficiary: notice of the proposed action and the reason for it; a written summary of the evidence supporting the proposed action; and an opportunity to rebut the evidence." POMS DI 40515.005(A) (available at http://policy.ssa.gov/poms.nsf/lnx/0440515005).

The SSA followed its own procedural mandate. Not only did the SSA provide Ms. Cohan with timely notice, but she was afforded ample opportunity to rebut the overpayment before it was assessed. Upon notification of her first overpayment, the SSA's July 15, 2008 letter discussed what Ms. Cohan needed to do if she disagreed with any of the agency's decisions and provided a thorough explanation of her appeal and waiver rights. (*Id.* at 44–49). As provided in the letter, "If you ask for wavier or appeal in the next 30 days, you will not have to pay us back until we make a decision about your case." (*Id.* at 48). The SSA did not withhold benefit payments until October 2008, giving Ms. Cohan sufficient time to request an appeal or waiver. As Magistrate Judge Jolson concluded, Ms. Cohan has not set forth facts pointing to a deprivation of her right to due process. (ECF No. 16 at 268). The Court agrees that there is no factual basis for Ms. Cohan's assertion that she was denied notice and the opportunity to be heard before the SSA declared an overpayment. Accordingly, the Court overrules Ms. Cohan's objection that she was denied her right to procedural due process under the Fifth Amendment.

## IV. Conclusion

For the reasons stated above, the Court concludes that there is substantial evidence to support the Commissioner's finding that Ms. Cohan's overpayment amount of $24,204.00 is not waived, and that she is liable for repayment of that amount. The Court therefore **OVERRULES**

Ms. Cohan's objections (ECF No. 18) and **ADOPTS** Magistrate Judge Jolson's Report and Recommendation. (ECF No. 16).

Under 42 U.S.C. 405(g), this Court is empowered to, "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The decision of the Commissioner is therefore **AFFIRMED**, and this action is **DISMISSED**. The clerk is directed to enter final judgment in this case.

       **IT IS SO ORDERED**.

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: April 17, 2019